PER CURIAM.
We have for review a referee’s report recommending that William Abramson be found guilty of professional misconduct and publicly reprimanded. We have jurisdiction. See art. V, § 15, Fla. Const. We *965 approve the findings of fact and recommendations of guilt in the referee’s report but disapprove the recommendation of sanction. Instead, we hold that the appropriate sanction in this case is a suspension of ninety-one days, requiring Abramson to demonstrate rehabilitation, including a demonstration that he is cognizant of and suitably remorseful for his misconduct pri- or to being reinstated as a member in good standing of The Florida Bar.[1] In an order dated December 18, 2008, we suspended Abramson from the practice of law for ninety-one days, which took effect on January 2, 2009. We write to articulate our reasoning so that other members of The Florida Bar can avoid Abramson’s misconduct.
BACKGROUND
The Florida Bar filed a complaint against Abramson in April 2007, alleging that Abramson violated several of the Rules Regulating the Florida Bar. Following a hearing, the referee filed his report with the Court in April 2008. The facts, as found by the referee, established the following conduct by Abramson.
Abramson represented the defendant in a criminal jury trial in the Fifteenth Judicial Circuit Court in and for Palm Beach County, the Honorable Richard I. Wennet presiding as the judge. Abramson’s client was charged with the felony of driving with a revoked license and in an unregistered motor vehicle. Abramson filed a demand for speedy trial; the case was set for trial on December 19, 2005. Judge Wennet arrived approximately sixteen minutes late on the date set for trial.
Abramson believed the case could be disposed of quickly by a motion for discharge or a change of plea, and he wanted Judge Wennet to entertain his motions before the proceedings began. However, the prospective jurors were already seated for jury selection to begin, and Judge Wennet immediately began jury selection. He did not want to interrupt the process by having a sidebar or a conversation with the attorneys outside the presence of the prospective jurors. Judge Wennet was not at fault for exercising his discretion to address Abramson’s motions after selecting the jury and for not wanting to interrupt that process.
Almost immediately after Judge Wennet introduced himself and began speaking to the prospective jurors, Abramson interrupted him and asked to approach the bench. Judge Wennet asked Abramson to be seated, but Abramson continued to ask to approach. Judge Wennet refused to allow Abramson to approach and informed Abramson that he would hear his motions after the voir dire was completed. Abram-son continued to interrupt the proceedings. He was discourteous and disrespectful to Judge Wennet in the presence of the prospective jurors. His conduct interrupted the proceedings by focusing their attention on him instead of the court. The assistant state attorney in the case, Dan Funk, testified that Abramson was visibly upset and insistent and disregarded Judge Wennet’s instructions. Funk described Abramson’s conduct as beyond belief and unlike anything he had seen before.
Abramson’s misconduct continued when it was his turn to question the prospective jurors. He was disrespectful of Judge Wennet, disparaging the trial judge’s qualifications to the prospective jurors. Abramson indicated-to the prospective jurors or in their presence — that Judge *966 Wennet had been completely disrespectful and unprofessional and had violated the rules and procedures. Abramson asked the prospective jurors whether they felt that Judge Wennet’s conduct was appropriate. The prospective jurors said that they thought Abramson had been disrespectful to Judge Wennet.
Abramson made the following statements during his voir dire of the prospective jurors.
Okay, so for all you know, the judge was the one that was completely disrespectful, lacking in respect, lacking in professionalism, and it was not me; you don’t know that because you were not here earlier, correct?
[[Image here]]
Okay. So, if, in fact, I’m doing what I think is legally right and the Judge is preventing me from doing my job, it is actually the judge that is unprofessional, not me, right?
[[Image here]]
This Judge said no. He violated the procedures; he violated the rules; he was disrespectful and he was unprofessional, not me. And that’s the answer to your question, Mr. Lewis.
Outside the presence of the prospective jurors, Abramson told Judge Wennet that Judge Wennet had been disrespectful, not Abramson.
No matter what I did wrong, Judge, no matter what I did, it is one hundred percent disrespectful of the Court — now the jury thinks it’s me, but, actually, Judge, it was a hundred percent you, and it’s completely your fault that this case denigrated itself to the point that it got.
Ultimately, the client discharged Abramson as her attorney, the trial did not go forward that day, and the prospective jurors were dismissed. Judge Wennet initiated contempt proceedings against Abramson but decided to refer the matter to The Florida Bar instead.
The referee found that Abramson failed to realize that Judge Wennet’s exercise of his discretion was not an issue in the Bar disciplinary proceedings against him— Abramson’s own conduct and actions were. The referee further found that Abramson’s conduct was deliberate and knowing, and as a result, the tribunal had been disrupted. Abramson impugned the qualifications and integrity of the judge and sought to impermissibly influence the prospective jurors. His actions were prejudicial to the administration of justice.
The referee recommended that Abram-son be found guilty of violating Rules Regulating the Florida Bar 4-3.5(a) (prohibiting a lawyer from seeking to influence a judge, juror, prospective juror, or other decision maker except as permitted by law or the rules of court); 4-3.5(c) (prohibiting a lawyer from engaging in conduct intended to disrupt a tribunal); 4-8.2(a) (prohibiting a lawyer from making a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge); and 4-8.4(d) (prohibiting a lawyer from engaging in conduct in connection with the practice of law that is prejudicial to the administration of justice, including knowingly, or through callous indifference, disparaging, humiliating, or discriminating against court personnel on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic).
The referee recommended that Abram-son (1) be publicly reprimanded by the Board of Governors of The Florida Bar; (2) serve one year of supervised probation to begin immediately; (3) attend the Pro *967 fessionalism Workshop presented by The Florida Bar within six months or if not offered within that time, the first available one, at his own cost, and submit proof of completion to the Bar within thirty days; (4) attend the Ethics School presented by The Florida Bar within six months or if not offered within that time, the first available one, at his own cost, and submit proof of completion to the Bar within thirty days; and (5) pay the Bar’s costs of $7,462.45 and any additional costs incurred.
In arriving at his sanction recommendations, the referee stated that he considered the Florida Standards for Imposing Lawyer Sanctions and caselaw. Despite this statement, the referee did not cite any particular standards or cases in support of his sanction recommendations other than the standards relating to mitigating and aggravating factors.
The referee found the following aggravating factors applicable: (1) Abramson had two prior disciplinary offenses;[2] (2) he had multiple offenses; and (3) he had substantial experience in the practice of law. He found the following mitigating factors applicable: (1) the facts and circumstances of the case were extreme and highly unusual; (2) Abramson had participated in many pro bono matters; (3) he lacked a dishonest or selfish motive; (4) Abramson was of good character and reputation; and (5) he exhibited remorse.
The Bar petitioned for review of the recommended sanction. The Bar argues that the appropriate sanction is a ninety-one-day suspension and should require attendance at The Florida Bar’s Professionalism Workshop.
ANALYSIS
As a preliminary matter, neither party challenges the referee’s findings of fact and recommendations of guilt. Accordingly, we approve those findings and recommendations without further discussion.
The Bar challenges the sanction recommendations, arguing that a ninety-one-day suspension is the appropriate sanction. We agree.
In reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is the Court’s responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. However, generally speaking, the Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing caselaw and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999). It is also well established that we view cumulative misconduct more seriously than an isolated instance of misconduct and that cumulative misconduct of a similar nature warrants an even more severe discipline than might dissimilar conduct. Fla. Bar v. Walkden, 950 So.2d 407, 410 (Fla.2007).
Standard 6.22 of the Florida Standards for Imposing Lawyer Sanctions is more applicable to the facts in this case than the comparable public reprimand standard and supports suspension over public reprimand. That standard provides that suspension is appropriate “when a lawyer knowingly violates a court order or rule, *968 and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.” (Emphasis added.) Standard 6.32 is also applicable to Abramson’s improper comments to the prospective jurors. It provides that suspension is appropriate when “a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding” (Emphasis added.) See also Fla. Stds. Imposing Law Sanes. 7.2 (providing that suspension is appropriate for knowingly engaging in conduct that is a violation of a duty owed as a professional, causing injury or potential injury to a client, the public, or the legal system); 8.2 (providing that suspension is appropriate when a lawyer has been publicly reprimanded for the same or similar conduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession).
A comparison of the cases cited by the Bar and Abramson reveals greater congruence between the facts extant here and those in the cases cited by the Bar. Florida Bar v. Morgan, 938 So.2d 496 (Fla.2006), is particularly helpful. In that case, this Court suspended an attorney for ninety-one days for inappropriate courtroom conduct. It was Morgan’s third time before the Court for similar misconduct, and he had been publicly reprimanded and suspended for ten days on the two previous occasions. Like Abramson here, Morgan was found guilty of violating rules 4-3.5(c) and 4-8.4(d). The same aggravating factors were found as those found here, with the addition of Morgan’s refusal to acknowledge the wrongful nature of his conduct. The referee found the mitigating factor of good character and reputation, including the provision of pro bono legal services, serving as a role model for an assistant state attorney, and being held in high esteem as an excellent and passionate advocate by two judges and an attorney.
While Abramson’s disrespectful comments to the trial court were not as extensive as Morgan’s, they were more blatantly disrespectful and egregious by virtue of the fact that most of them were made to or in the presence of the prospective jurors and included attempts to persuade the prospective jurors that the trial judge had behaved unprofessionally and had treated Abramson disrespectfully. Also, Abram-son violated two additional rules that Morgan did not — rules 4-3.5(a) and 4-8.2(a). Like Morgan, Abramson has been disciplined by this Court on two previous occasions, but the disciplinary sanctions imposed in these two prior cases were less severe than those imposed on Morgan. Abramson received a public reprimand and a public reprimand with one year’s probation; Morgan received a public reprimand and a ten-day suspension. See also Fla. Bar v. Wasserman, 675 So.2d 103 (Fla.1996) (imposing two six-month consecutive suspensions on an attorney in his fifth discipline case before the Court where the attorney had an angry outburst in court after an unfavorable ruling and expressed contempt for the court, stated in the hallway outside the courtroom that he would counsel his client to disobey the court’s ruling, and used profane language over the telephone to a judge’s judicial assistant); Fla. Bar v. Price, 632 So.2d 69 (Fla.1994) (suspending an attorney for ninety-one days for appearing in court under the influence of alcohol and behaving in a hostile, abrasive, and belligerent manner and providing that his reinstatement could be conditioned on his ability to show that he had satisfactorily completed an evaluation and course of treatment for substance abuse approved by the Bar); cf. Fla. Bar v. Martocci, 791 So.2d 1074 (Fla.2001) *969 (publicly reprimanding an attorney and imposing a two-year probation period during which the attorney was to be evaluated by Florida Lawyers Assistance, Inc., for possible anger management skills training or mental health assistance or both for unethical comments and behavior toward opposing counsel, the opposing party, and the opposing party’s family during depositions, in court, and outside the courtroom during breaks in the proceedings; there was no disrespect aimed at the judiciary); Fla. Bar v. Graham, 679 So.2d 1181 (Fla.1996) (publicly reprimanding a former judge for his inappropriate conduct during the Judicial Qualifications Commission proceedings that resulted in his removal from the bench and noting that he had already been sanctioned by his removal from the bench, had no other disciplinary history, and had exhibited and maintained a cooperative attitude toward the Bar discipline proceedings); Fla. Bar v. McLawhorn, 535 So.2d 602 (Fla.1988) (publicly reprimanding an attorney for acquiring an interest in a client’s property at issue in post-dissolution litigation and initially concealing the acquisition from the court; there was no disrespect aimed at the judiciary).
Abramson’s misconduct was egregious. He was disrespectful and confrontational with the presiding judge in an ongoing courtroom proceeding in the presence of the pool of prospective jurors in a criminal case. Regardless of any perceived provocation by the judge, Abramson responded inappropriately by engaging in a protracted challenge to the court’s authority. His ethical alternative, if he believed the trial court had erred, was by writ or appeal. He has also been publicly reprimanded twice before for serious misconduct.
CONCLUSION
Accordingly, William Abramson is hereby suspended for ninety-one days and thereafter until he has been reinstated. Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from William Abramson in the amount of $7,462.45, for which sum let execution issue.
It is so ordered.
QUINCE, C.J., and WELLS, PARIENTE, CANADY, and POLSTON, JJ., concur.
LEWIS, J., concurs in part and dissents in part with an opinion, in which ANSTEAD, Senior Justice, concurs.

. We are cognizant of the fact that Abramson has been elected as a circuit court judge for a term beginning January 6, 2009. We do not address the issue of whether Abramson is qualified to assume judicial office because that issue is not properly addressed in a lawyer discipline case, and neither party has raised or briefed that issue in this Court.

. Abramson was publicly reprimanded in April 2001, in Florida Bar v. Abramson, 790 So.2d 1108 (Fla.2001) (table). He was publicly reprimanded a second time and placed on probation for one year in August 2002, in Florida Bar v. Abramson, 826 So.2d 993 (Fla.2002) (table). Both cases were uncontested. The referee described Abramson’s previous disciplinary infractions as "serious.”